IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**CAPITAL FUNDING CONSULTANTS, L.L.C.,**<br>**WILLIAM CHARLES GUIDRY, and**<br>**MATTHEW BRIAN PIZZOLATO,**<br><br>　　　　　　Defendants. | Civil Action No. 2:09-cv-7409<br><br>Honorable Judge Mary Ann Vial Lemmon<br>Magistrate Judge Wilkinson, Jr. |

## ORDER FOR PRELIMINARY INJUNCTION
## AND OTHER ANCILLARY RELIEF AGAINST DEFENDANTS

On November 20, 2009, Plaintiff Commodity Futures Trading Commission (hereinafter "CFTC" or "Commission") filed a Complaint seeking injunctive and other equitable relief against Defendants Capital Funding Consultants, L.L.C. ("Capital Funding"), William Charles Guidry ("Guidry") and Matthew Brian Pizzolato ("Pizzolato") (hereinafter referred to collectively as "Defendants") for violations of the Commodity Exchange Act, ("Act"), 7 U.S.C. §§ 1 *et seq.* (2006) and as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XII (the CFTC Reauthorization Act of 2008) ("CRA"), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008). The Complaint alleged that the Defendants have violated the anti-fraud provisions, Sections 4b(a)(2)(i) and (iii), 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), Sections 4b(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), and 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2006) and that Capital Funding and

1

Guidry have violated Commission Regulation ("Regulation") 4.20, 17 C.F.R. § 4.20 (2009). This matter is before the Court on the CFTC's Motion for Preliminary Injunction ("PI").

This Honorable Court has previously issued a statutory restraining order freezing the Defendants' assets, preserving books and records, and permitting CFC staff access to such records. The Court has now read and considered the Complaint for Injunctive and Other Equitable Relief, the Plaintiff's Motion for a PI, the Brief in Support of Plaintiff's Motion for a PI, the Declarations of Mary E. Spear, Len Riviere, Frank Panepinto, Joan Ackerman, Kathye Almon, Felix Polito, James S. Hodges and Millie Hebert, and the exhibits and attachments thereto, and all other papers filed herein by the Plaintiff, Commodity Futures Trading Commission ("CFTC"), and the oral argument by the CFTC and sworn testimony before this Court of Mary E. Spear, Len Riviere, Kathye Almon, James S. Hodges and Millie Hebert,

**THE COURT FINDS THAT:**

1. This Court has jurisdiction over the subject matter of this action and the parties hereto pursuant to §6c(a) of the Act, 7 U.S.C. §13a-1(a), which authorizes the CFTC to seek injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder;

2. Venue properly lies with this Court pursuant to §6c of the Act, 7 U.S.C. §13a-1(e), in that the Defendants are found in, inhabit, or transact business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places;

3. Plaintiff CFTC is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§1 *et seq*.

(2008), and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2007);

4. Defendant Capital Funding is an unincorporated membership organization formed under the Louisiana Limited Liability Act whose office is in Covington, Louisiana. Guidry is a member manager of Capital Funding. Capital Funding had accounts through which it traded commodity futures and options at Man Financial Group, Inc. ("MFG") and R.J. O'Brien & Associates, L.L.C. ("RJO"). Capital Funding was registered with the Commission as a commodity pool operator ("CPO") from January 26, 2005, through October 28, 2005, when that registration was withdrawn and was registered as an Introducing Broker ("IB") from November 7, 2005, until June 13, 2007, when that registration was withdrawn.

5. Defendant Guidry is 35 years old and currently resides in Plano, Texas, but lived in Lacombe, Louisiana, until 2008. Guidry is a managing member of Capital Funding and made the trading decisions for the Capital Funding trading accounts at MFG and RJO. Guidry was registered as an associated person ("AP") of Capital Funding from July 14, 2005, until June 13, 2007, when that registration was withdrawn and then was registered as an AP of another of his companies, Virtuosity Futures, L.L.C., effective May 10, 2007, until March 6, 2008, when that registration was withdrawn. Guidry has not opposed the preliminary injunction.

6. Defendant Pizzolato is 26 years old and resides in Tickfaw, Louisiana. Pizzolato has never been registered with the Commission in any capacity. Pizzolato has not opposed the preliminary injunction.

7. It appears to the satisfaction of the Court that there is good cause to believe that the Defendants, have engaged, are engaging in and are about to engage in violations of

3

§§ 4(b)(a)(2)(i) and (iii), 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and violated Sections 4(b)(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), with respect to acts occurring on or after June 18, 2008, and 4*o*(1) of the Act, 7 U.S.C. §6*o*(1), and that Defendants Capital Funding Consultants, L.L.C. and William Charles Guidry have engaged, are engaging in and are about to engage in violations of Commission Regulation 4.20, 17 C.F.R. § 4.20 (2009), thereunder and there is a reasonable likelihood that the CFTC will prevail on the merits of this action.

## I. **DEFINITIONS**

For the purposes of this Order, the following definitions apply:

8. "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts including bank accounts and accounts at financial institutions, brokerage firms or futures commission merchants, credits, receivables, lines of credit, contracts including spot and futures contracts, insurance policies, and all cash, wherever located.

9. The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

10. "Defendants" mean Capital Funding Consultants, L.L.C., William Charles Guidry and Matthew Brian Pizzolato, and any person insofar as he or she is acting in the capacity as an

4

officer, agent, servant, employee or attorney of any of the Defendants, individually or jointly, and any person who receives actual notice of this Order by personal service or otherwise, including Federal Express or other commercial overnight service, email or facsimile or pursuant to Federal Rule of Civil Procedure 4 and Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents.

## II. FACTS

### A. Statutory and Regulatory Background

The verified facts and sworn testimony regarding the statutory and regulatory background show that:

11. A commodity pool is defined in Regulation 4.10(d)(1), 17 C.F.R. §4.10(d)(1), as any investment trust, syndicate or similar form of enterprise engaged in the business of investing pooled funds in trading commodity futures and/or commodity options.

12. A commodity pool operator ("CPO") is defined in §1a(5) of the Act, 7 U.S.C. §1(a)(5), as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market.

13. A commodity pool "participant" is defined in Regulation 4.10(c), 17 C.F.R. §4.10(c), as any person who has any direct financial interest in a commodity pool.

14. An "associated person" of a CPO ("AP") is defined in Regulation 1.3(aa)(3), 17 C.F.R. § 1.3(aa)(3) (2009), as a natural person associated with a CPO "as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing

5

similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged."

15. The general anti-fraud provisions of the Act, Sections 4b(a)(2)(i) and (iii), 7 U.S.C. §§6b(a)(2)(i) and (iii), for conduct occurring before June 18, 2008, and Sections 4b(a)(1)(A) and (C), 7 U.S.C. §§ 4b(a)(1)(A) and (C), for conduct occurring on or after June 18, 2008; and make it unlawful for any person to engage in fraudulent or deceptive conduct, including the issuance of false reports or statements, in connection with futures transactions.

16. Section 4*o*(1) of the Act, 7 U.S.C. §6*o*(1), makes it unlawful for any CPO to either directly or indirectly employ any device or scheme to defraud commodity pool participants or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or prospective participant.

17. Regulation 4.20(a), 17 C.F.R. § 4.20(a) (2009), prohibits a CPO from failing to operate its pool as an entity cognizable as a legal entity separate from that of the pool operator.

18. Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2009), prohibits a CPO from accepting funds from participants for a pool that it operates other than in the pool's name.

19. Regulation 4.20(c) (2009), prohibits a CPO from commingling the property of any pool that it operates or that it intends to operate with the property of any other person.

20. Section 13c(b) of the Act, 7 U.S.C. §13c(b), establishes controlling person liability for individuals who either directly or indirectly control any entity that is found to have violated the provisions of the Act and its Regulations.

21. Section 2(a)(1)(B) of the Act, 7 U.S.C. §2(a)(1)(B), establishes a principal's liability for the acts of a principal's agent that occur within the scope of the agent's relationship with its principal.

**B.    The Defendants' Fraud**

The verified facts and sworn testimony regarding Defendants' Background show that:

22. From at least November 2004, Pizzolato and Capital Funding solicited individuals for investment in purportedly safe, secure investments with guaranteed rates of return, such as Certificates of Deposit ("CDs"), Treasury Bills or annuities. Guidry and Pizzolato agreed that Pizzolato would give Guidry a portion of the funds he had solicited and that Guidry would use some of the funds to trade commodity futures and options.

23. Pizzolato solicited investors but, in doing so, did not reveal his actual plans for the use of their funds, including his plan to give some investors' funds to Guidry to trade commodity futures.

24. Pizzolato received approximately $19.5 million from approximately 160 investors, typically in the form of personal or third-party checks endorsed by the investors. Some of the third-party checks from investors represented a liquidation of their legitimate annuity investments and/or retirement savings.

25. Pizzolato did not use investor funds in the manner that he had represented to prospective investors. Instead, he gave more than $3.1 million of funds from 24 investors to Guidry, pursuant to their agreement that Guidry would engage in commodity futures and commodity options trading with some of those funds, a high risk investment strategy that was not disclosed to investors.

26. Guidry knew that the funds he received were from investors.

27. Guidry and Capital Funding accepted the investor checks received from Pizzolato, including personal checks and third-party checks that had been endorsed by the investors, made payable to Capital Funding, and deposited them into the Capital Funding corporate checking account that Guidry controlled. The investors' funds were commingled with other Capital Funding money in the Capital Funding bank account.

28. Beginning in at least March 2005, Capital Funding was acting as a CPO and Guidry was acting as an associated person of a CPO in that Capital Funding accepted investor funds and used a portion of them to trade commodity futures at MFG and RJO.

29. During part of the time when Capital Funding and Guidry accepted investor checks, they were registered as a CPO and as an AP of a CPO respectively, the latter registration only becoming effective after Guidry had passed the Series 3 exam.

30. More than $500,000 of participant funds were received by Capital Funding while that entity was registered as a CPO and more than $2.5 million of participant funds were received by Capital Funding after it had withdrawn its registration as a CPO.

31. In the account opening documents for the Capital Funding futures trading accounts at MFG and RJO, Guidry identified himself as the managing member of Capital Funding and represented that no other persons had a financial interest in those trading accounts. Those statements were false because those accounts were funded with funds from participants.

32. Guidry made the trading decisions for the Capital Funding commodity trading accounts. The Capital Funding trading accounts at both MFG and RJO lost money trading futures and options. Guidry's trading activity was not disclosed to most participants and the trading losses were not disclosed to any of the participants.

33. Guidry controlled Capital Funding in that he is the managing member of the Capital Funding, an authorized signatory on the Capital Funding bank accounts, and the person who opened and controlled the Capital Funding commodity futures trading accounts.

34. Guidry, acting individually and as an agent for, and a controlling person of, Capital Funding, defrauded participants by misappropriating more than $221,815.53 of participant funds for his personal expenses.

35. Guidry, acting individually and as an agent for, and a controlling person of, Capital Funding, defrauded at least one participant by making a purported "interest" payment to a participant before the participant's funds were invested in any way

36. At present, the vast majority of the more than $3.1 million that Guidry received from participants has not been returned.

### III. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND REGULATIONS

37. As described above in ¶¶ 22 to 36, this Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that each of the Defendants violated Sections 4b(a)(2)(i) and (iii) of the Act with respect to acts occurring before June 18, 2008; and section 4b(a)(1)(A) and (C) of the Act as amended by the Commodity Reauthorization Act of 2008 ("CRA") for acts occurring on and after June 18, 2008, and 4*o*(1) of the Act.

38. As described above in ¶¶ 22 to 36, this Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that Capital Funding and Guidry have violated Commission Regulation ("Regulation") 4.20, 17 C.F.R. § 4.20.

39. As described above in ¶¶ 22 to 36, this Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that Defendant Guidry directly or indirectly controlled Capital Funding and did not act in good faith or knowingly induced, directly

9

or indirectly, the acts constituting Capital Funding's violations alleged in this Count and further that Guidry is liable for Capital Funding's violations of Sections 4b(a)(2)(i) and (iii), 7 U.S.C. §§6b(a)(2)(i) and (iii), for conduct occurring before June 18, 2008, and Sections 4b(a)(1)(A) and (C), 7 U.S.C. §§ 4b(a)(1)(A) and (C), for conduct occurring on or after June 18, 2008, and 4*o*(1) of the Act, 7 U.S.C. § 7*o*(1) and Regulation 4.20, 17 C.F.R. §4.20.

40. As described above in ¶¶ 22 to 36, this Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that the actions and omissions of Guidry and Pizzolato were carried out within the scope of their employment or office with Capital Funding and that Capital Funding is liable for Guidry and Pizzolato's violations of Sections 4b(a)(2)(i) and (iii), 7 U.S.C. §§6b(a)(2)(i) and (iii), for conduct occurring before June 18, 2008, and Sections 4b(a)(1)(A) and (C), 7 U.S.C. §§ 4b(a)(1)(A) and (C), for conduct occurring on or after June 18, 2008, and 4*o*(1) of the Act, 7 U.S.C. § 7*o*(1) pursuant to §2(a)(1)(B), 7 U.S.C. §2(a)(1)(B) of the Act.

41. There is a substantial likelihood that, absent the continuation of the asset freeze and preservation of books and records, the Defendants will fail to maintain the status quo, and conceal records or conceal, dissipate or otherwise divert assets, thereby defeating the possibility of effective final relief in the form of equitable monetary relief.

42. It further appears to the satisfaction of this Court that unless Defendants are enjoined as provided in this Order, Defendants will continue to engage in the above acts and practices that are in violation of the Act and its Regulations, causing irreparable injury to the public.

43. Weighing the equities and considering the CFTC's likelihood of success in its cause of action, this Order is in the public interest.

## IV. RELIEF GRANTED

IT IS THEREFORE ORDERED THAT:

44. The Defendants and all persons insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendants who receive actual notice of such Order by personal service or otherwise, including Federal Express or other commercial overnight service, email or facsimile or pursuant to Federal Rule of Civil Procedure 4 and Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, are restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly violating Sections 4b(a)(1)(A) and (C), 7 U.S.C. §§ 4b(a)(1)(A) and (C), and 4*o*(1) of the Act, 7 U.S.C. § 7*o*(1) and Regulation 4.20, 17 C.F.R. §4.20;

### *MAINTAIN ASSET FREEZE*

IT IS FURTHER ORDERED THAT:

45. Defendants and their agents, servants, employees, successors, assigns, attorneys and all persons insofar as they are acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, from directly or indirectly dissipating, withdrawing, transferring, removing, concealing or disposing of any cash, cashier's checks, funds, assets or other property of, or within the custody, control or actual or constructive possession of Defendants, including, but not limited to, all funds, personal property, money or securities held in Defendants' name, jointly or individually, whether held or maintained in safety

deposit boxes, and including all funds on deposit in any financial or brokerage institution, futures commission merchant, bank or savings and loan account held by, under the actual or constructive control, or in the name of Defendants, jointly or individually, funds or property of Defendants' investors, wherever located, whether held in the name of the Defendants, jointly or individually, or any other entity owned or controlled by Defendants;

46. Pending further Order of this Court, any bank, financial or brokerage institution, business entity, futures commission merchant or person that holds, controls, or maintains custody of any funds, assets or other property of Defendants, or has held, controlled, or maintained custody of any funds, assets or other property of Defendants, and who receives notice of this Order by personal service or otherwise, shall:

- A. Prohibit Defendants and any other person from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise disposing of any such asset except as directed by further order of the Court;

- B. Deny Defendants and all other persons access to any safe deposit box that is:
  1. titled in the name of Defendants, whether individually or jointly; or
  2. otherwise subject to access by the Defendants;
- C. Until further order of this Court, For any funds held pursuant to this Order in t he name of the Defendants, to maintain fixed values, convert all balances into U.S. dollars using the exchange rate in effect as of the date of this Order;

- D. Cooperate with all reasonable requests of the CFTC relating to implementation of this Order, including producing records related to Defendants' accounts and Defendants' businesses;

## *PROHIBITION OF DESTRUCTION OF BOOKS AND RECORDS*

IT IS FURTHER ORDERED THAT:

47. Defendants and their agents, servants, employees, successors, assigns, attorneys and all persons insofar as they are acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from directly or indirectly destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants wherever located, including all such records concerning the Defendants' business operations;

### *ACCESS TO AND INSPECTION OF BOOKS AND RECORDS*

IT IS FURTHER ORDERED THAT:

48. Defendants shall permit representatives of the Plaintiff CFTC to immediately inspect the books, records and other electronically stored data, tape recordings, and other documents of the Defendants and their agents, including all such records of Defendants' business operations, wherever they are situated and whether they are in the possession of the Defendants or others and to copy said documents, data, and records either on or off the premises where they may be situated and whether they are in the possession of the Defendants or others, and to copy said documents, data and records, either on or off the premises where they may be situated; and

49. Defendants and their agents, servants, employees, successors, assigns, attorneys and all persons insofar as they are acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, from directly or indirectly refusing to make available for inspection by the CFTC, when as requested, any books, records, documents, correspondence, brochures, manual, electronically stored data, tape records or other property of Defendants wherever located, including, but not limited to, all such records of Defendants' business operations;

## *CEASE BUSINESS*

IT IS FURTHER ORDERED THAT:

50. Defendants and their agents, servants, employees, successors, assigns, attorneys and all persons insofar as they are acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise close all open customer positions and cease accepting customer orders;

## *CEASE TRADING*

51. Defendants are restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

   A. Entering into any commodity futures or options transactions for their own accounts, for any accounts in which they have a direct or indirect interest and/or having any commodity futures or options traded on their behalf;

   B. Engaging in, controlling, or directing the trading of any commodity futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

   C. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration, or acting, directly or indirectly, as a principal, agent, or any other officer, agent or employee of any person registered, required to be registered, or exempted from registration with the Commission. This includes, but is not limited to, soliciting, accepting or receiving any funds, revenue or other property from any person, giving advice for compensation, or soliciting prospective customers, relating to the purchase or sale of any commodity futures or options.

## *REQUIRED ACCOUNTING*

IT IS FURTHER ORDERED THAT:

52. Defendants shall prepare, sign and file with the Court, by January 7, 2010, a complete and accurate accounting for the period of November 2004 to the date of such accounting, which shall be no earlier than the date of this Order. Such accounting shall include, without limitation, the identification of:

   A. All banks, futures commission merchants, financial or brokerage institutions, including account numbers, which hold or have held funds, securities, commodity interests, assets, liabilities, and other property currently owned or controlled (legally, equitably or otherwise) directly or indirectly by Defendants, whether individually or jointly;

   B. All funds, securities, commodity interests, assets, liabilities, and other property currently owned or controlled (legally, equitably or otherwise) directly or indirectly by Defendants, whether individually or jointly;

   C. All funds, securities, commodity interests, assets and other property received directly or indirectly by Defendants, describing the source, amount, disposition, and current location of each listed item;

   D. All funds, securities, commodity interests, assets and other property transferred or otherwise disposed of directly or indirectly by the Defendants, describing the source, amount, disposition, and current location of each listed item, including accounts or assets of Defendants held by any bank, futures commission merchant, financial or brokerage institutions located inside and/or outside the territorial United States;

   E. All customers of Defendants, including name, address, telephone number and email, account number, deposit and withdrawal dates and amounts; and

   F. The names and last known addresses of each bailee, debtor or other person or entity currently holding any funds, securities, commodity interests, assets or other property owned or controlled (legally, equitably or otherwise) by Defendants, whether individually or jointly.

53. Defendants are further ordered to immediately identify and provide an accounting for all assets and property that is currently maintained outside the United States, including but not limited to all funds on deposit in any bank, futures commission merchant, financial or

brokerage institution, including but not limited to funds held by, under the control of, or in the name of the Defendants, whether jointly, individually or otherwise.

## *SERVICE OF THE ORDER*

54. It is further ordered that copies of this Order may be served by any means, including by way of personal service, Federal Express or other commercial overnight service, email or facsimile or pursuant to Federal Rule of Civil Procedure 4 and Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of the Defendants, or that may be subject to any provision of this Order. Mary Beth Spear and John Wilson, employees of the CFTC, are hereby specially appointed to serve process, and/or effectuate service of process, including this Order and all other papers in this cause.

## *FORCE AND EFFECT*

55. The injunctive provisions of this Order shall be binding on the Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of the Defendants and upon any person who receives actual notice of this Order by personal service, facsimile or otherwise, including Federal Express or other commercial overnight service, email or facsimile or pursuant to Federal Rule of Civil Procedure 4 and Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, insofar as he or she is acting in active concert or participation with the Defendants.

56. This Order shall remain in effect until further order of the Court and the Court shall retain jurisdiction over this action to ensure compliance with this Order and for all other

purposes related to this action.

IT IS SO ORDERED.

Date:   December 10th 2009

_____
Honorable Judge Mary Ann Vial Lemmon
UNITED STATES DISTRICT JUDGE
Eastern District of Louisiana